UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HOLLY K.,[1]

      Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

6:20-CV-6028 (JLS)

## DECISION AND ORDER

Plaintiff Holly K. brought this action under the Social Security Act, seeking review of a determination by the Commissioner of Social Security (the "Commissioner") that she was not disabled.  Dkt. 1.  Plaintiff moved for judgment on the pleadings.  Dkt. 15.  The Commissioner responded and cross-moved for judgment on the pleadings.  Dkt. 20.  Plaintiff replied.  Dkt. 21.

For the reasons below, the Court grants Plaintiff's motion in part and denies the Commissioner's cross-motion.

## PROCEDURAL HISTORY

On August 30, 2016, Plaintiff applied for Supplemental Security Income ("SSI") alleging disability since August 1, 2016.  Tr. 211.[2]  Plaintiff's application was

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this Decision and Order identifies Plaintiff by first name and last initial.

[2] All filings at Dkt. 12 are the transcript of proceedings before the Social Security Administration. All references to Dkt. 12 are denoted "Tr. __."

initially denied by the Social Security Administration on November 9, 2016. Tr.
152. Plaintiff then filed a written request for a hearing on November 18, 2016, Tr.
164, which took place before an Administrative Law Judge ("ALJ") on November 27,
2018. Tr. 29. The ALJ issued an unfavorable decision to Plaintiff on December 6,
2018, confirming that she was not disabled. Tr. 7-23. The Appeals Council denied
Plaintiff's request for review on December 11, 2019. Tr. 1-6. Plaintiff then
commenced this action. Dkt. 1.

## LEGAL STANDARDS

### I.   District Court Review

The scope of review of a disability determination involves two levels of
inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court
must "decide whether [the Commissioner] applied the correct legal principles in
making the determination." *Id.* The Court's review for legal error ensures "that the
claimant has had a full hearing under the . . . regulations and in accordance with
the beneficent purposes of the Social Security Act." *See Moran v. Astrue*, 569 F.3d
108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).
Second, the Court "decide[s] whether the determination is supported by 'substantial
evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such
relevant evidence as a reasonable mind might accept as adequate to support a
conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations
and citations omitted). The Court does not "determine *de novo* whether [the

2

claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal

quotations and citations omitted).  But "the deferential standard of review for

substantial evidence does not apply to the Commissioner's conclusions of law."

*Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  Indeed, if "a reasonable basis

for doubt whether the ALJ applied correct legal principles" exists, applying the

substantial evidence standard to uphold a finding that the claimant was not

disabled "creates an unacceptable risk that a claimant will be deprived of the right

to have her disability determination made according to correct legal principles."

*Johnson*, 817 F.2d at 986.

## II.    Disability Determination

An ALJ evaluates disability claims through a five-step process established by

the Social Security Administration to determine if a claimant is disabled.  *See* 20

C.F.R. § 416.920(a)(2).  At the first step, the ALJ determines whether the claimant

currently is engaged in substantial gainful employment.  *Id.* § 416.920(a)(4)(i).  If

so, the claimant is not disabled.  *Id.*  If not, the ALJ proceeds to step two.  *Id.* §

416.920(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe

impairments.  *Id.* § 416.920(a)(4)(ii).  If there are no severe impairments, the

claimant is not disabled.  *Id.*  If there are any severe impairments, the ALJ proceeds

to step three.  *Id.* § 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or

combination of impairments meets or equals an impairment listed in the

regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* § 416.920(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See id.* § 416.920(a)(4)(iv); *id.* §§ 416.920(d)-(e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* § 416.945. After determining the claimant's RFC, the ALJ completes step four. *Id.* § 416.920(e). If the claimant can perform past relevant work, she is not disabled and the analysis ends. *Id.* § 416.920(f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* § 416.920(a)(4)(iv); *id.* § 416.920(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* §§ 416.920(a)(4)(v), (g); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Specifically, the Commissioner must prove that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v.*

4

*Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir. 1986)).

**DISCUSSION**

**I.**   **The ALJ's decision**

The ALJ evaluated Plaintiff's claim for benefits under the process discussed above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of her application. Tr. 12.

At step two, the ALJ determined that Plaintiff had the following severe impairments: "PTSD, depression, anxiety, degenerative disc disease of the cervical spine, and bilateral epicondylitis." *Id.*  He also found that Plaintiff had non-severe asthma. Tr. 13.

At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled the severity of the impairments listed in the regulations. *Id.* The ALJ then determined Plaintiff had the RFC to perform "light work as defined in 20 CFR § 416.967(b) except that she may occasionally reach overhead bilaterally, occasionally stoop, kneel, crouch, never crawl or climb ladders, ropes, and scaffolds, and may tolerate only occasional changes to a routine work setting." *Id.*

And at step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ relied on the testimony of a vocational expert to determine that jobs exist in significant numbers in the national economy that the Plaintiff can perform—including a small parts assembler, parking lot cashier, and ticket taker.

5

Tr. 18. As a result, the ALJ concluded that Plaintiff was not under a disability from August 30, 2016 through the date of the decision. Tr. 19.

II.    Analysis

Plaintiff makes three arguments. Dkt. 15-1. First, she asserts that the ALJ erred in his application of "the special technique" at steps two and three. *Id.* at 19. Second, Plaintiff claims that the ALJ improperly considered treating source opinion evidence in formulating the mental RFC. *Id.* at 24, 32. Third, she argues that the physical RFC is unsupported by substantial evidence. *Id.* at 36.

For the reasons set forth below, Plaintiff's first argument has merit and, as such, her motion is granted in part.

A.    **The ALJ's analysis of Plaintiff's mental impairments using the special technique.**

When determining the existence and severity of a claimant's mental health impairments, "the Commissioner has promulgated . . . regulations . . . [that] require application of a 'special technique' at the second and third steps of the five-step framework . . . and at each level of administrative review." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citing *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and 20 C.F.R. § 404.1520a(a)).[3] Under the special technique, the ALJ first must determine whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 416.920a(b)(1). "[A] ...mental impairment must be

---

[3] The Social Security Administration uses the same five-step evaluation process to determine eligibility for both SSI, which Plaintiff applied for, and Disability Insurance Benefits ("DIB") programs. *See* 20 C.F.R § 404.1520 (concerning DIB); 416.920 (concerning SSI).

established by objective medical evidence from an acceptable medical source." *Id.* §
416.921. The ALJ is required to "specify the symptoms, signs, and laboratory
findings that substantiate the presence of the impairment(s)," *id.* § 416.920a(b)(1),
and to "document application of the technique in the decision." *Id.* § 416.920a(e).

If an impairment is found, the ALJ then must "rate the degree of functional
limitation resulting from the impairment(s)" by applying a five-point scale to four
broad functional areas, or domains, identified as the ability to: (1) understand,
remember, or apply information; (2) interact with others; (3) concentrate, persist, or
maintain pace; and (4) adapt or manage oneself. *Id.* § 416.920a(c)(3). These four
areas are often referred to as the "paragraph B" criteria. *Id.* § Pt. 404, Subpt. P,
App. 1, Pt. A2, § 12.00 (2018). Per the regulations, assessment of a claimant's
functional limitations "is a complex and highly individualized process." *Id.* §
416.920a(c)(1). The five-point scale, which rates the degree of functional limitation
from "none" to "extreme," is used to determine if the claimant's mental limitations
are severe and, if so, if the claimant's medically determinable impairment meets or
equals the criteria of a listed mental disorder. *Id.* §§ 416.920a(d)(1)-(2). The ALJ's
written decision must "incorporate the pertinent findings and conclusions based on
the technique [and] show the significant history, including examination and
laboratory findings, and the functional limitations that were considered in reaching
a conclusion about the severity of the mental impairment(s)." *Id.* § 416.920a(e)(4).

Here, the ALJ determined at step two that Plaintiff had moderate limitations
in "adapting or managing oneself," but no limitations in the other domains of the

7

paragraph B criteria.  Tr. 12.  In support of this conclusion, the ALJ credited

Plaintiff's "full array of daily living activities," including hobbies and socializing.

Tr. 12-13.  For example, he briefly cited hearing testimony and portions of the

record containing Plaintiff's own reports of her daily activities.[4]  Tr. 12-13.

At step 3, the ALJ found that Plaintiff did not have "an impairment or

combination of impairments that meets or medically equals the severity of one of

the listed impairments."  Tr. 13.  The ALJ explained briefly that the "pertinent

Listings require[d] specific findings that [we]re not present" here.  *Id.*  Nor did he

conclude that any "acceptable medical source designated to make equivalency

findings" made any such findings.  *Id.*

## B. The ALJ's failure to consider evidence properly at steps two and three was prejudicial error.

Plaintiff argues that the ALJ failed to consider evidence demonstrating that

her impairments met or equaled one or more of the Listings.[5]  Dkt. 15-1 at 21, 22,

29.  Plaintiff further claims that this was harmful error because it precluded a

finding of disability at step three.  *Id.* at 21.  The Court agrees.

A claimant is *per se* disabled if her impairments meet or medically equal one

of the specific requirements of a Listing in 20 C.F.R. Part 404, Subpt. P, App. 1.  20

---

[4] The ALJ cited three documents from the record.  The first is a function report
completed by Plaintiff.  Tr. 250-59.  The other two are reports completed by two of
Plaintiff's doctors.  Tr. 437-441, 442-47.  The ALJ does not reference medical
findings from either of the latter documents in this section of the decision.
[5] Specifically, Plaintiff argues that evidence supports findings under the following
listed impairments: 12.04 Depressive, bipolar and related disorders, 12.06 Anxiety
and obsessive-compulsive disorders, 12.08 Personality and impulse-control
disorders, and 12.15 Trauma- and stressor-related disorders.  Dkt. 15-1 at 21, 22,
29, (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2 (2018)).

C.F.R. § 404.1520(a)(4)(iii). The burden is on the claimant to show that she meets or medically equals the criteria for a particular listing. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "For a claimant to show that h[er] impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Likewise, for a claimant to show "that h[er] unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id.*; *see also* 20 C.F.R. § 416.926(a) ("[A claimant's] impairment[] is medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment.").

The listings for mental disorders are arranged into eleven categories, with each category containing either two or three paragraphs labelled A, B,[6] and C.[7] In

---

[6] The paragraph B criteria for each applicable Listing is the same. The regulatory language reads:
B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
    1) Understand, remember, or apply information (see 12.00E1).
    2) Interact with others (see 12.00E2).
    3) Concentrate, persist, or maintain pace (see 12.00E3).
    4) Adapt or manage oneself (see 12.00E4).
*See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2, § 12.00 (2018).
[7] The paragraph C criteria for each applicable Listing is the same. The regulatory language reads:
C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
    1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

order to meet Listings 12.04[8], 12.06[9], or 12.15[10], a claimant's impairment must satisfy the requirements of either paragraphs A and B or paragraphs A and C. *Id.*

---

2) Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

*Id.*

[8] Depressive, bipolar and related disorders:

A. Medical documentation of the requirements of paragraph 1 or 2:

1) Depressive disorder, characterized by five or more of the following:
   a) Depressed mood; b) Diminished interest in almost all activities; c) Appetite disturbance with change in weight; d) Sleep disturbance; e) Observable psychomotor agitation or retardation; f) Decreased energy; g) Feelings of guilt or worthlessness; h) Difficulty concentrating or thinking; or i) Thoughts of death or suicide.
2) Bipolar disorder, characterized by three or more of the following:
   a) Pressured speech; b) Flight of ideas; c) Inflated self-esteem; d) Decreased need for sleep; e) Distractibility; f) Involvement in activities that have a high probability of painful consequences that are not recognized; or g) Increase in goal-directed activity or psychomotor agitation.

*Id.* at § 12.04.

[9] Anxiety and obsessive-compulsive disorders:

A. Medical documentation of the requirements of paragraph 1, 2, or 3:

1) Anxiety disorder, characterized by three or more of the following:
   a) Restlessness; b) Easily fatigued; c) Difficulty concentrating; d) Irritability; e) Muscle tension; or f) Sleep disturbance.
2) Panic disorder or agoraphobia, characterized by one or both:
   a) Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or
   b) Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).
3) Obsessive-compulsive disorder, characterized by one or both:
   a) Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or
   b) Repetitive behaviors aimed at reducing anxiety.

*Id.* at § 12.06.

[10] Trauma and stressor related disorders:

A. Medical documentation of all of the following:

1) Exposure to actual or threatened death, serious injury, or violence;
2) Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);

Mental disorders under Listing 12.08[11] must meet the criteria of paragraphs A and B. *Id.*

Plaintiff presents evidence relevant to each criterion from various mental health sources, but primarily relies on evidence from treating psychiatrist Annabel Fu, M.D. Dkt. 15-1 at 21, 29, 30. Beginning with the paragraph A criteria, "Dr. Fu identified signs and symptoms relating to GAD [generalized anxiety disorder], borderline personality disorder, and ADHD, including: depressed mood; appetite disturbance with change in weight; sleep disturbance; observable psychomotor agitation or retardation; distractibility; feelings of guilt or worthlessness; difficulty concentrating or thinking; thoughts of death or suicide; and pressured speech." *Id.* at 29 (citing Tr. 450).

Next, concerning the paragraph B criteria, Dr. Fu found Plaintiff's functional limitations to be as follows: marked limitation in understanding, remembering, or

---

3) Avoidance of external reminders of the event;
4) Disturbance in mood and behavior; and
5) Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

*Id.* at § 12.15.

[11] Personality and impulse-control disorders:

A. Medical documentation of a pervasive pattern of one or more of the following:
1) Distrust and suspiciousness of others;
2) Detachment from social relationships;
3) Disregard for and violation of the rights of others;
4) Instability of interpersonal relationships;
5) Excessive emotionality and attention seeking;
6) Feelings of inadequacy;
7) Excessive need to be taken care of;
8) Preoccupation with perfectionism and orderliness; or
9) Recurrent, impulsive, aggressive behavioral outbursts.

*Id.* at § 12.08.

applying information; marked limitation in interacting with others; extreme limitation in concentrating, persisting, or maintaining pace; marked limitation in adapting or managing oneself. *Id.* (citing Tr. 452).

Lastly, Plaintiff supplies evidence under the paragraph C criteria. *Id.* at 29, 30. Dr. Fu found each of the three criteria applied to Plaintiff. Tr. 452. As shown from other evidence, Plaintiff received ongoing mental health treatment from December 30, 2015 through October 4, 2018. Dkt. 15-1 at 30 (citing Tr. 55-72, 576-77, 972). Plaintiff's history of treatment for substance abuse and mental health issues is documented in the record. *Id.* at 30 (citing Tr. 556, 772). She also received case management services "through multiple agencies." *Id.* at 30 (citing Tr. 592, 644, 654, 672, 734, 763, 798). Lastly, in addition to the aforementioned functional limitations, at least one report indicated Plaintiff had moderate limitations in her ability to appropriately handle stress. Tr. 440.

In response, the Commissioner claims that the ALJ properly concluded "Plaintiff's allegations were inconsistent with disabling mental impairments" by relying on adequate evidence from the record. Dkt. 20-1 at 24. The evidence cited by the Commissioner, however, consists of dozens of pages that are not cited in the ALJ's decision. *Id.* at 20-24. Any additional evidence offered in support of the ALJ's conclusions was not found in the analysis under steps two or three. Tr. 12-4. As the Commissioner admits, "the ALJ did not discuss [this evidence] in this section" of the decision. Dkt. 20-1 at 21. This Court must conclude, therefore, that the Commissioner's explanation serves as "*post hoc* rationalization[] for agency

action" which this Court may not accept. *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).

While an ALJ's failure to follow the special technique does not always require remand, remand is warranted here. *See Kohler*, 546 F.3d at 269 ("[W]e leave open the possibility that an ALJ's failure to adhere to the regulations' special technique might under other facts be harmless"). Because the ALJ failed to consider evidence that conflicted with his determination in significant ways, the outcome may well have been different had the ALJ adhered to the regulations. *See NLRB v. Enter. Ass'n of Steam & Gen. Pipefitters*, 429 U.S. 507, 522 n. 9 (1977). ("[A] reviewing court must [] remand when an administrative law judge errs unless, as a matter of law, the result was not affected by the error."). It is particularly important for an ALJ to address conflicting probative evidence with respect to the step three analysis, because a claimant whose condition meets or equals that of a Listing is deemed disabled *per se. See id.* § 416.920(d), 416.925, 416.926. *See Ornelas-Sanchez v. Colvin*, 632 F. App'x 48, 49 (2d Cir. 2016) (The ALJ's failure to credit probative evidence at step three was cause for remand because "if this finding was credited, [the plaintiff] would be disabled without proceeding to steps four and five.").

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings
(Dkt. 15) is **GRANTED** in part, and the Commissioner's cross-motion for judgment
on the pleadings (Dkt. 20) is **DENIED**.  The decision of the Commissioner is
**VACATED**, and the matter is **REMANDED** for further administrative proceedings
consistent with this opinion.


SO ORDERED.


Dated:       March 9, 2022
             Buffalo, New York


                                        _____
                                        JOHN L. SINATRA, JR.
                                        UNITED STATES DISTRICT JUDGE

14